# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>*Plaintiff,*<br><br>v.<br><br>ANDREW WHEELER,<br>in his official capacity as Administrator of the<br>Environmental Protection Agency, and the<br>ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Defendants.* | Civil Case No.: 1:19-cv-3287<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF**<br><br><br>**(Clean Air Act, 42 U.S.C. §§ 7401 *et<br>seq.*)** |

Plaintiff State of New York alleges as follows:

## INTRODUCTION

1.      New York seeks declaratory and injunctive relief in this Clean Air Act (Act) citizen suit brought against Andrew Wheeler, in his official capacity as Administrator of the Environmental Protection Agency, and the Environmental Protection Agency (together EPA), to compel EPA to comply with certain nondiscretionary duties under the Act.

2.      EPA failed to perform its nondiscretionary duty to act on a petition submitted on March 12, 2018 by New York to EPA under section 126(b) of the Act, 42 U.S.C. § 7426(b) (Petition), to address the interstate transport of ozone pollution from sources in states upwind of New York. In the Petition, New York identified sources or groups of sources in Illinois, Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia that are significantly contributing to nonattainment or interfering with maintenance of the 2008 and/or 2015 national ambient air quality standards (NAAQS) for ozone in New York.

1

3.      Section 126(b) of the Act mandates EPA action on such a petition within 60 days after receipt. Despite granting itself a six-month extension until November 9, 2018, EPA has failed to hold a public hearing or take final action in response to the Petition.

4.      New York seeks an order declaring that EPA is in violation of section 126(b) of the Act for the agency's failure to perform its mandatory duties to hold a public hearing and either make the requested findings or deny the Petition, and enjoining EPA to perform its mandatory duties by a date certain.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to section 304(a)(2) of the Act, 42 U.S.C. § 7604(a)(2), which authorizes any person, after duly giving notice, to commence a citizen suit seeking to compel the performance of a nondiscretionary duty under the Act. The Court also has jurisdiction to hear this civil action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (action to compel officer or agency to perform a duty owed to plaintiffs).

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) because this civil action is brought against an agency of the United States and an officer of the United States, acting in his official capacity, and a substantial part of the events or omissions giving rise to the plaintiff's claim occurred in this judicial district. EPA's failure to perform the mandatory duties set forth in this complaint is adversely impacting areas within this judicial district, specifically the New York City metropolitan area, which is in nonattainment of the ozone NAAQS based in part on the significant contribution of air pollution from the sources in upwind states identified in the Petition. Additionally, a substantial number of the citizens and residents on whose behalf New York brings this action reside in this district, and EPA maintains a regional office in this district.

## NOTICE

7.     On February 7, 2019, pursuant to section 304(b) of the Act, 42 U.S.C. § 7604(b), New York sent a letter via certified mail, return receipt requested, to EPA providing notice of New York's intention to file suit against EPA, if it did not act within 60 days to take final action on the Petition. A copy of the February 7, 2019 notice letter is attached as **Exhibit 1**.

8.     More than sixty days have passed since New York served notice, and EPA has not taken the statutorily-required actions described in the notice letter.

## PARTIES

9.     Plaintiff New York is a sovereign entity that brings this action on behalf of its citizens and residents and on its own behalf to protect its interests as administrator of healthcare programs and schools, as an employer, and in protecting and preserving the natural resources held in trust by the State. New York is a "person" as defined in the applicable provision of the Act, 42 U.S.C. § 7602(e).

10.     Defendant Wheeler is the Administrator of EPA and is sued in his official capacity. The Administrator is charged with implementation and enforcement of the Act, including the nondiscretionary requirements to hold a public hearing on a section 126(b) petition and to timely make a finding or deny such petition. 42 U.S.C. § 7426(b).

11.     Defendant EPA is an executive agency of the federal government charged with implementing and enforcing the Act, in coordination with the states.

12.     As a result of the omissions alleged herein, New York has suffered and will continue to suffer harm from the delay in addressing the interstate transport of air pollution from the sources in upwind states identified in the Petition. This group of sources significantly contributes to nonattainment and/or significantly interferes with maintenance of the 2008 and 2015

ozone NAAQS in New York, to the detriment of the health and welfare of its citizens and residents, and to the State.

## STATUTORY BACKGROUND

13.   The Act requires EPA to establish and periodically revise NAAQS, which establish maximum allowable ambient air concentrations for certain pollutants known as "criteria" pollutants.

14.   The Act requires each state to submit a state implementation plan for every promulgation or revision of a NAAQS within three years of that standard's promulgation or revision. 42 U.S.C. § 7410(a)(1). The implementation plan must provide for the "implementation, maintenance, and enforcement" of the standard. *Id.*

15.   A state's implementation plan must meet the requirements listed under 42 U.S.C. § 7410(a)(2), including the requirements of section 110(a)(2)(D)(i)(I), the "Good Neighbor Provision," which requires the plan to contain adequate provisions to prohibit sources within the state from emitting air pollution in amounts that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any" NAAQS.

16.   Pursuant to section 126(b) of the Act, "[a]ny State or political subdivision may petition the Administrator for a finding that any major source or group of stationary sources emits or would emit any air pollutant in violation of the prohibition of [the Good Neighbor Provision]." 42 U.S.C. § 7426(b).

17.   Section 126(b) further requires that ""[w]ithin 60 days after receipt of any petition under this subsection and after public hearing, the Administrator shall make such a finding or deny the petition." *Id.*

4

18.     Section 126(c) provides that "it shall be a violation of this section and the applicable implementation plan in such State . . . (2) for any major existing source to operate more than three months after such finding has been made with respect to it. The Administrator may permit the continued operation of a source referred to in paragraph (2) beyond the expiration of such three-month period if such source complies with such emission limitations and compliance schedules (containing increments of progress) as may be provided by the Administrator to bring about compliance with the requirements in [the Good Neighbor Provision] of this title or this section as expeditiously as practicable, but in no case later than three years after the date of such finding." 42 U.S.C. § 7426(c).

## FACTUAL BACKGROUND

**A.     Ozone Pollution and New York's Nonattainment with Ozone NAAQS Due to Transported Pollution from Sources in Upwind States**

19.     Ozone—commonly referred to at ground level as "smog"—is a colorless, odorless gas that forms when other atmospheric pollutants, known as ozone "precursors," such as nitrogen oxides (NOx) and volatile organic compounds (VOCs), react in the presence of sunlight.

20.     EPA has found significant negative health effects in individuals exposed to elevated levels of ozone, including aggravation of existing medical conditions, such as asthma, bronchitis, heart disease, and emphysema, as well as coughing, throat irritation, and lung tissue damage. Exposure to ozone has also been linked to early deaths. Children, the elderly, and people who already have lung diseases are particularly at risk from exposure to ozone pollution.

21.     EPA promulgated revised NAAQS for ozone of 75 parts per billion (ppb) on March 12, 2008. 73 Fed. Reg. 16,436 (Mar. 27, 2008) (2008 ozone NAAQS).

22.     In 2015, based on updated scientific information about the health risks of ozone at lower concentrations, EPA revised the ozone NAAQS, setting the standards at 70 ppb. 80 Fed. Reg. 65,292 (Oct. 26, 2015) (2015 ozone NAAQS).

23.     Following EPA's promulgation of the 2008 ozone NAAQS, on July 20, 2012, EPA designated the New York-N. New Jersey-Long Island, NY-NJ-CT metropolitan area (NYMA) as a nonattainment area with a marginal classification. This area consists of nine counties within New York—Bronx, Kings, Nassau, New York, Queens, Richmond, Rockland, Suffolk and Westchester—along with 12 counties in New Jersey and three in Connecticut.

24.     The Jamestown, New York area, consisting solely of Chautauqua County, was also designated as marginal nonattainment. 77 Fed. Reg. 30,088 (May 21, 2012).

25.     The NYMA failed to attain the 2008 ozone NAAQS by the marginal attainment deadline of July 20, 2015 and was reclassified by EPA to moderate nonattainment effective June 3, 2016. 81 Fed. Reg. 26,697 (May 4, 2016). This reclassification established a new attainment deadline of July 20, 2018.

26.     The Jamestown nonattainment area attained the 2008 ozone NAAQS by the marginal attainment deadline of July 20, 2015, but New York has not requested a redesignation because of the ongoing possibility of that area again exceeding the ozone NAAQS.

27.     The three states with areas in the NYMA (New York, New Jersey, and Connecticut) have surpassed their three-percent-per-year emission reduction requirements for the 2008 ozone NAAQS, but have not reached attainment of the NAAQS. Certified monitoring data for 2015 through 2017—the basis for determining the area's compliance with the NAAQS—indicated that the NYMA did not attain the NAAQS by the 2018 moderate area deadline.

28.     New York submitted a reclassification request to EPA on November 13, 2017, requesting that EPA classify the NYMA as a "serious" nonattainment area. On November 14, 2018, EPA proposed to reclassify the NYMA to "serious" nonattainment. 83 Fed. Reg. 56,781 (Nov. 14, 2018). EPA has now missed the statutory deadline of January 20, 2019 to reclassify the NYMA to "serious" nonattainment.  The reclassification to a "serious" nonattainment area will require that the NYMA attain the 2008 ozone NAAQS by July 20, 2021 and set a deadline for submitting a plan to attain the NAAQS that will require another minimum of 3 percent per annum in emissions reductions.

29.     With respect to the 2015 ozone NAAQS, the NYMA was designated as a nonattainment area and the Jamestown area was designated as attainment, but remains in danger of exceeding that standard primarily due to transported pollution.

30.     Air quality modeling in both the NYMA and Jamestown areas demonstrate that high concentrations of ozone in these locations are, in significant measure, the result of emissions from major stationary sources of NOx located outside and upwind of New York. These sources are often characterized by the operation of large boilers and other units that require very tall stacks to emit the exhaust from their combustion processes. As a result of the use of these tall stacks and the high temperatures of the exiting gases, enormous volumes of NOx emissions are sent high into the atmosphere. These high concentrations of NOx and subsequently formed ozone are transported to downwind areas in western New York and the NYMA where they combine with ozone formed locally and other ozone precursors to result in ozone levels that exceed the NAAQS.

31.     New York has long been involved in efforts to reduce emissions from in-state sources of NOx and to mitigate the regional transport of NOx. New York requires in-state sources to meet a variety of stringent emissions standards and comply with NOx Reasonably Available

7

Control Technology (RACT). In addition, New York has implemented stringent emissions control measures related to mobile sources. New York's regional efforts have included participation in the Ozone Transport Commission, which developed the NOx Budget Program. New York has also been involved with the Ozone Transport Assessment Group, whose efforts resulted in the 1998 NOx SIP Call by EPA. New York has also participated in multiple iterations of NOx Budget trading programs, the most recent of which is the 2011 Cross-State Air Pollution Rule (Cross-State Rule), 76 Fed. Reg. 48,208 (Aug. 8, 2011), and 2016 Cross-State Rule Update, 81 Fed. Reg. 74,504 (Oct. 26, 2016).

32.     EPA's regional interstate transport rulemakings have proven an important tool for addressing ongoing significant contribution by upwind states and sources to downwind ozone pollution, but EPA has failed to implement a full, federal-level remedy to completely address the issue of transported ozone. EPA's most recent rulemaking, the Cross-State Rule Close-Out, finalized in December 2018, 83 Fed. Reg. 65,878 (Dec. 21, 2018), failed to require any further emissions reductions in states upwind of New York beyond those required by the 2016 Cross-State Update.

**B.     New York's Section 126(b) Petition**

33.     On March 12, 2018, New York, through its Department of Environmental Conservation (DEC), submitted the Petition to EPA. *See* **Exhibit 2**. The Petition requested that EPA make a finding that groups of sources identified in each of nine states (Illinois, Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia and West Virginia), significantly contribute to New York's nonattainment and/or interfere with New York's maintenance of the 2008 and 2015 ozone NAAQS in violation of the Good Neighbor Provision. New York further

requested that EPA establish enforceable emissions limitations for the major NOx sources identified and establish a compliance schedule to ensure these sources expeditiously complied.

34.    New York's Petition demonstrated that interstate transport of ozone precursor emissions from the upwind major stationary sources or group of sources identified in the Petition have led or will lead to difficulty attaining or maintaining the NAAQS in New York. New York's Petition was supported by modeling from DEC that included NOx emissions from stationary upwind sources emitting 400 tons per year or more in the electric generating unit (EGU or power plant), non-EGU, and oil and gas sectors in states that EPA had identified in its modeling for the Cross-State Rule Update as contributing ozone concentrations of at least one percent of the 2008 ozone NAAQS—0.75 ppb or more—to a monitor in a downwind state. DEC's modeling identified stationary sources in Illinois, Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia and West Virginia that are significantly contributing to nonattainment or interfering with maintenance of the 2008 and/or 2015 ozone NAAQS in New York. DEC's modeling showed impacts from individual states' collections of 400 tons-per-year sources of up to 6.34 ppb in Chautauqua County and 4.97 ppb in the NYMA.

35.    The upwind sources' significant contributions to New York's ozone levels regularly compromise the health and welfare of the more than 12 million New Yorkers living in the NYMA and the approximately 130,000 people in Chautauqua County, and on the worst ozone days, significantly contribute to unhealthy air for more than 16 million New Yorkers. EPA's failure to require emissions reductions from these upwind sources also creates a disproportionate and inequitable economic burden for sources of ozone precursors in New York State.

36.    New York's Petition called upon EPA to require the significantly contributing states to impose suitable emission limits on the large stationary sources identified as affecting air

quality in New York within the three years allowed by section 126(c). These sources should be operating with modern NOx emission controls (*e.g.*, selective catalytic or non-catalytic reduction systems) and at emissions rates commensurate with New York's RACT standards, which are based on a control cost efficiency of approximately $5,000 per ton of NOx removed.

37.     Despite the express requirement that EPA act within 60 days on New York's Petition, on May 3, 2018, then-EPA Administrator E. Scott Pruitt signed a notice granting EPA an extension of time to act under section 307(d)(10) of the Act, 42 U.S.C. § 7607(d)(10), citing "insufficient time to complete the technical and other analyses and public notice-and-comment process required." 83 Fed. Reg. at 21,909. EPA extended its time for action approximately six months to "no later than November 9, 2018,"and stated that "this extension may be invoked only once." *Id.* at 21,909-10.

38.     To date, EPA has failed to hold a public hearing or take final action on the Petition.

39.     Therefore, EPA is in violation of its mandatory, nondiscretionary duties set forth in 42 U.S.C. § 7426(b).

40.     EPA's failure to act on the Petition within the statutory period is a clear breach of EPA's statutory duty and harms New York and the public health and welfare of its residents.

41.     New York and the residents of the affected downwind areas are harmed by elevated levels of ozone pollution due in significant part to the upwind sources identified in the Petition. By failing to timely act on New York's Petition, EPA is causing them to be exposed to higher levels of ozone for a longer period of time, resulting in more harmful health impacts.

42.     EPA's failure to comply with its non-discretionary duty also places unfair economic and administrative burdens on New York. New York is required, subject to punitive consequences, to timely meet its attainment obligations under the Act. DEC's modeling demonstrates that the

sources identified in the Petition are significantly contributing to ozone pollution in New York, including at monitoring locations in nonattainment or maintenance areas. Thus, New York needs EPA to fully address interstate transport from these sources to meet its 2008 and 2015 ozone NAAQS requirements under the Act.

## CLAIM FOR RELIEF
(Failure to Perform Nondiscretionary Duties
Pursuant to 42 U.S.C. § 7426(b))

43.    New York re-asserts and re-alleges paragraphs 1 through 42 above.

44.    As set forth above, EPA had nondiscretionary duties under section 126 of the Act, 42 U.S.C. § 7426(b), to hold a public hearing on New York's Petition and to timely make the requested finding or to deny the Petition within 60 days of receipt.

45.    EPA's failure to hold a public hearing on New York's Petition and to make the requested finding or to deny the Petition within 60 days of receipt (or, at the latest, by November 9, 2018), are violations of 42 U.S.C. § 7426(b), which continue to this day.

46.    These violations constitute a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" under 42 U.S.C. § 7604(a)(2).

47.    EPA's failure to take final action on the Petition has harmed and continues to harm New York and its citizens and residents, by delaying action to address the interstate transport of air pollution from the sources in the upwind states identified in the Petition. These sources significantly contribute to nonattainment of the 2008 and 2015 ozone NAAQS, and/or significantly interfere with maintenance of the same, in New York, to the detriment of the health and welfare of its citizens and residents.

## PRAYER FOR RELIEF

WHEREFORE, New York respectfully requests that this Court enter judgment against EPA as follows:

1.      Declare that EPA is in violation of section 126(b) of the Act by failing to perform a mandatory, nondiscretionary duty to timely take final action on New York's Petition;

2.      Enjoin EPA, by dates certain, to perform its mandatory duties to (1) hold a public hearing on New York's Petition, and (2) make the requested finding or deny the Petition, after considering the public comments;

3.      Award New York the costs of litigation, including reasonable attorneys' fees;

4.      Retain jurisdiction over this matter for purposes of ensuring EPA's compliance with the Court's order; and

5.      Such other and further relief as this Court deems just and proper.


Dated:  April 12, 2018

                                        Respectfully Submitted,

                                        LETITIA JAMES
                                        *Attorney General of New York*

                        By:     *S/Michael J. Myers*
                                        MICHAEL J. MYERS
                                        MORGAN A. COSTELLO
                                        CLAIBORNE E. WALTHALL
                                        Assistant Attorneys General
                                        Environmental Protection Bureau
                                        The Capitol
                                        Albany, NY 12224
                                        (518) 776-2382
                                        michael.myers@ag.ny.gov
                                        *For Plaintiff State of New York*