# EXHIBIT 1:
# NOTICE LETTER



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
ENVIRONMENTAL PROTECTION BUREAU

**BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

February 7, 2019

Hon. Andrew Wheeler
Acting Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

    Re:   **Clean Air Act notice of intent to sue for failure to perform nondiscretionary duty to make finding or deny petition brought by the State of New York under 42 U.S.C. § 7426(b)**

Dear Acting Administrator Wheeler:

    The State of New York respectfully requests that the United States Environmental Protection Agency (EPA) take immediate steps to remedy its breach of an absolute duty under the Clean Air Act (Act) to make a finding or deny a petition from New York, dated March 12, 2018 under section 126(b) of the Act, 42 U.S.C. § 7426(b), (the 126 Petition) to address the interstate transport of ozone pollution from sources in states upwind of New York. In the 126 Petition, New York identified sources or groups of sources in Illinois, Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia and West Virginia that are significantly contributing to nonattainment or interfering with maintenance of the 2008 and/or 2015 ozone national ambient air quality standards (NAAQS) in New York. EPA received this petition on March 14, 2018 and was required to act on the 126 Petition within 60 days, but granted itself a six-month extension by notice published in the Federal Register on May 11, 2018, 83 Fed. Reg. 21,909, citing 42 U.S.C. § 7607(d)(10) and

specifying that it would take action on the petition by November 9, 2018.[1] However, to date, EPA has taken no action and is in default of its obligations. EPA's failure to act on the 126 Petition by the deadlines set in the Act violates the Act and harms New York and the health and welfare of its residents. Therefore, unless EPA promptly remedies this failure by making the findings requested or denying the 126 Petition, at the expiration of the required 60-day notice period, New York intends to file suit against you in your official capacity as the Acting Administrator of the EPA and against EPA for failure to perform a non-discretionary duty under the Clean Air Act. *See* 42 U.S.C. §§ 7604(a)&(b); 40 C.F.R. part 54.

Furthermore, under Section 304(d) of the Act, 42 U.S.C. § 7604(d), "[t]he court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." If New York must file suit to obtain EPA's compliance with this nondiscretionary duty, we intend to seek all available costs, including without limitation, reasonable attorneys' fees.

*Background*

Under the cooperative federalism framework of the Act, EPA and the states are required to work together to achieve healthy air quality throughout the country. To promote this, the Act requires EPA to establish and periodically revise NAAQS, which establish maximum allowable ambient air concentrations for certain pollutants. 42 U.S.C. §§ 7408-7409. States are primarily responsible for ensuring that their air quality meets the NAAQS. *Id.* § 7407(a).

Ground-level ozone is not emitted directly into the air, but is a secondary air pollutant that forms when other atmospheric pollutants, known as ozone "precursors," such as nitrogen oxides (NOx) and volatile organic compounds (VOCs), react in the presence of sunlight. 80 Fed. Reg. 65,292, 65,299 (Oct. 26, 2015). EPA has found significant negative health effects in individuals exposed to elevated levels of ozone, including coughing, throat irritation, lung tissue damage, and aggravation of existing conditions, such as asthma, bronchitis, heart disease, and emphysema. *Id.* at 65,302-11. Exposure to ozone has also been linked to premature mortality. *Id.* Some subpopulations are particularly at risk from exposure to ozone pollution, including children, the elderly, and those with existing lung diseases, such as asthma. *Id.*

EPA promulgated a revised NAAQS for ozone of 75 parts per billion (ppb) on March 12, 2008, 73 Fed. Reg. 16,436 (Mar. 27, 2008) (2008 ozone NAAQS). In 2015,

---

[1] New York does not concede that EPA had the authority or lawfully exercised any such authority to grant itself this six-month extension.

based on updated scientific information about the health risks of ozone at lower concentrations, EPA revised the ozone NAAQS, setting the standard at 70 ppb. 80 Fed. Reg. at 65,292. Both standards remain in effect.

The formation and transport of ozone occurs on a regional scale over hundreds of miles throughout much of the eastern United States. EPA has for decades known of the regional nature of the ground-level ozone air quality problem, and that pollution from sources located in multiple upwind states contributes to downwind states' problems attaining and maintaining the ozone NAAQS, with those sources in upwind states routinely contributing to multiple downwind air quality problems in varying amounts. Thus, EPA has long recognized that downwind states cannot on their own comply with the ozone NAAQS, and that reducing ozone concentrations in downwind states such as New York requires a reduction in what EPA calls the "interstate transport" of ozone precursors in upwind states. 81 Fed. Reg. 74,504, 74,514 (Oct. 26, 2016).

The Clean Air Act requires each state to submit a state implementation plan (SIP) for every promulgation or revision of a NAAQS, within three years of that standard's promulgation or revision, that provides for the "implementation, maintenance, and enforcement" of the standard. 42 U.S.C. § 7410(a)(1). These plans are often referred to as "Infrastructure" SIPs. An Infrastructure SIP must meet the requirements listed under 42 U.S.C. § 7410(a)(2), including the requirements of 42 U.S.C. § 7410(a)(2)(D)(i)(I), referred to as the Good Neighbor Provision. The Good Neighbor Provision requires that each state's Infrastructure SIP contain adequate provisions to prohibit emissions that will significantly contribute to nonattainment of a NAAQS, or interfere with maintenance of a NAAQS, in a downwind state.

Despite the SIP requirements and Good Neighbor Provision, Congress has recognized that an array of complementary tools are necessary to address the interstate transport of pollutants such as ozone from specific sources. Section 126(b) provides that "[a]ny State or political subdivision may petition the Administrator for a finding that any major source or group of stationary sources emits or would emit any air pollutant in violation of the prohibition of [the Good Neighbor Provision]." 42 U.S.C. § 7426(b). Congress further provided for prompt action on such a petition, requiring that "[w]ithin 60 days after receipt of any petition under this subsection and after public hearing, the Administrator *shall make* such a finding or deny the petition." *Id.* (emphasis added).

Pursuant to section 126(c), if the Administrator finds that a major source or group of sources is emitting a pollutant in violation of the Good Neighbor Provision, any source subject to the finding must cease its operation within three months, unless the Administrator permits the continued operation of the source beyond the time,

3

conditioned on the source complying with such emission limitations[2] and compliance schedules[3] (containing appropriate increments of progress) as the Administrator may direct to bring about compliance with section 110. Such compliance must occur as expeditiously as practicable, but no later than three years after the date of the Administrator's finding.

*Ozone Air Quality in New York*

Following EPA's promulgation of the 2008 ozone NAAQS, on July 20, 2012, EPA designated the New York-N. New Jersey-Long Island, NY-NJ-CT metropolitan area (NYMA) as a nonattainment area with a marginal classification. This area consists of nine counties within New York—Bronx, Kings, Nassau, New York, Queens, Richmond, Rockland, Suffolk and Westchester—along with 12 counties in New Jersey and three in Connecticut. The Jamestown, New York area, consisting solely of Chautauqua County, was also designated as marginal nonattainment. 77 Fed. Reg. 30,088 (May 21, 2012).

The NYMA failed to attain the 2008 ozone NAAQS by the marginal attainment deadline of July 20, 2015 and was reclassified by EPA to moderate nonattainment effective June 3, 2016. 81 Fed. Reg. 26,697 (May 4, 2016). This reclassification established a new attainment deadline of July 20, 2018. The Jamestown nonattainment area attained the 2008 ozone NAAQS by the marginal attainment deadline of July 20, 2015, but New York has not requested a redesignation because of the ongoing possibility of that area again exceeding the ozone NAAQS.

The three states with areas in the NYMA have surpassed their three-percent-per-year emission reduction requirements for the 2008 ozone NAAQS, but have not reached attainment of the NAAQS. Certified monitoring data for 2015 through 2017—the basis for determining the area's compliance with the NAAQS—indicated that the NYMA did not attain the NAAQS by the 2018 moderate area deadline. New York submitted a reclassification request to EPA on November 13, 2017, prior to the filing of New York's 126 Petition, requesting that EPA classify the NYMA as a

---

[2] The term "emission limitation" means a requirement established by the state or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under the Clean Air Act. 42 U.S.C. § 7602(k).

[3] The term "compliance schedule" means a schedule of required measures including an enforceable sequence of actions or operations leading to compliance with an emission limitation, other limitation, prohibition or standard. 42 U.S.C. § 7602(p).

"serious" nonattainment area.[4] The reclassification to a "serious" nonattainment area will require that the NYMA attain the 2008 ozone NAAQS by July 20, 2021.

As discussed above, EPA strengthened the primary and secondary ozone NAAQS in 2015, revising it to 70 ppm measured over an eight-hour period. As expected at the time New York filed its 126 Petition, the NYMA was designated as a nonattainment area for the 2015 ozone NAAQS. The Jamestown area was designated as attainment, but remains in danger of exceeding that standard primarily due to transported pollution.

Air quality monitors in both the NYMA and Jamestown areas demonstrate that high concentrations of ozone in these locations are largely the result of emissions from major stationary sources of NOx located outside and upwind of New York. These sources are often characterized by the operation of large boilers and other units that require very tall stacks to emit the exhaust from their combustion processes. As a result of the use of these tall stacks and the high temperatures of the exiting gases, enormous volumes of NOx emissions are sent high into the atmosphere. These high concentrations of NOx and subsequently formed ozone are transported to downwind areas in western New York and the NYMA where they combine with ozone formed locally and other ozone precursors to result in ozone levels that exceed the NAAQS.

New York has long been involved in efforts to reduce emissions from in-state sources of NOx and to mitigate the regional transport of NOx. New York requires in-state sources to meet a variety of stringent emissions standards and comply with NOx Reasonably Available Control Technology (RACT). In addition, New York has implemented stringent emissions control measures related to mobile sources. New York's regional efforts have included participation in the Ozone Transport Commission, which developed the NOx Budget Program. New York has also been involved with the Ozone Transport Assessment Group, whose efforts resulted in the 1998 NOx SIP Call by EPA. New York has also participated in multiple iterations of NOx Budget trading programs, the most recent of which is the 2011 Cross-State Air Pollution Rule (CSAPR)[5] and 2016 CSAPR Update.[6]

EPA's regional interstate transport rulemakings have proven an important tool for addressing ongoing significant contribution by upwind states and sources to downwind ozone pollution, but EPA has failed to implement a full, federal-level remedy to completely address the issue of transported ozone. EPA's most recent

---

[4] Following submission of New York's 126 Petition, EPA proposed to reclassify the NYMA to "serious" nonattainment in November 2018. 83 Fed. Reg. 56,781 (Nov. 14, 2018).

[5] 76 Fed. Reg. 48,208 (Aug. 8, 2011).

[6] 81 Fed. Reg. 74,504 (Oct. 26, 2016).

rulemaking, the CSAPR Close-Out, finalized in December 2018,[7] failed to require any further emissions reductions in states upwind of New York beyond those required by the CSAPR Update.[8] New York, along with eight other states, petitioned EPA in 2013 to expand the Ozone Transport Region to include many of the states where the sources named in the 126 Petition are located. EPA denied this petition in November 2017,[9] and New York and several of its co-petitioners are currently challenging this denial.[10]

*New York's Section 126(b) Petition*

On March 12, 2018, New York through the New York State Department of Environmental Conservation (NYSDEC) sent EPA a section 126(b) petition seeking a finding that the groups of sources identified in each of nine states, Illinois, Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia and West Virginia, significantly contribute to nonattainment or interfere with maintenance of the 2008 and 2015 ozone NAAQS in violation of the Good Neighbor Provision. New York further requested that EPA establish enforceable emissions limitations for the major NOx sources identified and establish a compliance schedule to ensure these sources expeditiously complied.

New York's 126 Petition was supported by modeling from the NYSDEC that included NOx emissions from stationary upwind sources emitting 400 tons per year or more in the electric generating unit (EGU or power plant), non-EGU, and oil and gas sectors in states that EPA had identified in its modeling for the CSAPR Update as contributing ozone concentrations of at least one percent of the 2008 ozone NAAQS—0.75 ppb or more—to a monitor in a downwind state. NYSDEC's modeling identified stationary sources in Illinois, Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia and West Virginia that are significantly contributing to nonattainment or interfering with maintenance of the 2008 and/or 2015 ozone NAAQS in New York. NYSDEC's modeling showed impacts from individual states' collections of 400 tons-per-year sources of up to 6.34 ppb in Chautauqua County and 4.97 ppb in the NYMA. The upwind sources' significant contributions to New York's ozone levels regularly compromise the health and welfare of the more than 12 million New Yorkers living in the NYMA and the approximately 130,000 people in

---

[7] 83 Fed. Reg. 65,878 (Dec. 21, 2018).

[8] New York and a coalition of other downwind states, and a coalition of citizen petitioners have challenged this final rule. *See* Petition for Review, *State of New York, et al. v. EPA, et al.*, Case No. 19-1019 (D.C. Cir., filed Jan. 30, 2019); Petition for Review, *Downwinders at Risk, et al. v. EPA, et al.*, Case No. 19-1020 (D.C. Cir., filed Jan. 30, 2019).

[9] 82 Fed. Reg. 51,238 (Nov. 3, 2017).

[10] Petition for Review, *New York, et al. v. EPA, et al.*, (D.C. Cir., filed Dec. 26, 2017).

Chautauqua County, and on the worst ozone days, significantly contribute to unhealthy air for more than 16 million New Yorkers. EPA's failure to require emissions reductions from these upwind sources also creates a disproportionate and inequitable economic burden for sources of ozone precursors in New York State.

As discussed above, consistent with the requirements of the Good Neighbor Provision and section 126(b), a state filing a section 126(b) petition must demonstrate that any major stationary source or group of sources upwind emits or would emit an air pollutant such as ozone precursors, that leads to difficulty attaining or maintaining the NAAQS in the petitioning downwind state. New York has met that burden in its 126 Petition.

New York's 126 Petition called upon EPA to require the significantly contributing states to impose suitable emission limits on the large stationary sources identified as affecting air quality in New York within the three years allowed by section 126(c). These sources should be operating with modern NOx emission controls (*e.g.*, selective catalytic or non-catalytic reduction systems) and at emissions rates commensurate with New York's RACT standards, which are based on a control cost efficiency of approximately $5,000 per ton of NOx removed. By failing to act on New York's 126 Petition and require these reasonable controls, New York and the residents of the affected downwind areas have been harmed by elevated levels of ozone pollution due in significant part to the identified upwind sources.

### *EPA Has Failed to Perform a Non-discretionary Duty to the Detriment of New York*

Despite the express requirement that EPA act within 60 days on New York's 126 Petition, on May 3, 2018, then-EPA Administrator E. Scott Pruitt signed a notice granting EPA an extension of time to act under section 307(d)(10) of the Act, 42 U.S.C. § 7607(d)(10), citing "insufficient time to complete the technical and other analyses and public notice-and-comment process required." 83 Fed. Reg. at 21,909. EPA extended its time for action approximately six months to "no later than November 9, 2018," and stated that "this extension may be invoked only once." *Id.* at 21,909-10. To date, EPA has taken no action on the 126 Petition.

EPA's failure to act on the 126 Petition within the statutory period is a clear breach of EPA's statutory duty and harms New York and the public health and welfare of its residents. EPA's failure to comply with its non-discretionary duty also places unfair economic and administrative burdens on New York. NYSDEC's modeling demonstrates that the sources identified in the 126 Petition are significantly contributing to ozone pollution in New York. Thus, New York needs EPA to fully address interstate transport from these and other states upwind from New York, to meet its ozone NAAQS requirements under the Act.

To date, EPA has failed to perform its mandatory duty pursuant to 42 U.S.C. § 7426(b) to take final action on New York's 126 Petition, which if granted, would provide significant relief to New York. EPA's failure to fulfill its mandatory duty violates the Clean Air Act and harms New York and its residents. Consequently, this letter provides notice as required under section 304 of the Act, 42 U.S.C. § 7604, and 40 C.F.R. part 54, that New York intends to file suit against you and EPA for failing to timely act on New York's 126 Petition.

Unless EPA takes the required actions before the end of the applicable notice period, 60 days after the postmark date of this letter, we intend to bring a suit in United States District Court under section 304 of the Act for EPA's failure to perform the non-discretionary duties mandated by 42 U.S.C. § 7426(b). The suit will seek injunctive and declaratory relief, the costs of litigation (including without limitation, reasonable attorneys' fees), and may seek other relief.

Very truly yours,

LETITIA JAMES
*Attorney General of New York*

By: *[signature]*

Morgan A. Costello
Claiborne E. Walthall
*Assistant Attorneys General*
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2380
Claiborne.Walthall@ag.ny.gov